NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NEW JERSEY BUILDING LABORERS'  :
STATEWIDE BENEFIT FUNDS,       :
                               :
        Petitioner,            :    Civil Action No.  13-755 (SRC)
                               :
        v.                     :    OPINION
                               :
CONEX CONSTRUCTION CORP.,      :
                               :
                               :
        Respondent.            :

**CHESLER, U.S.D.J.**

This matter comes before the Court on two motions: 1) the motion to confirm the arbitration award by Petitioner New Jersey Building Laborers' Statewide Benefit Funds (the "Funds"); and 2) the motion to vacate the arbitration award by Respondent Conex Construction Corp. ("Conex").  For the reasons that follow, the motion to confirm the arbitration award will be granted, and the motion to vacate the arbitration award will be denied.

This case concerns a labor dispute that was heard by arbitrator J.J. Pierson (the "Arbitrator").  In brief, the dispute concerns the benefit fund obligations and contributions of Respondent to Petitioner under a collective bargaining agreement.  After conducting hearings, on February 4, 2013, the Arbitrator issued a final decision (the "Award") which, *inter alia*, ordered Respondent to pay Petitioner $824,644.72.  Petitioner then filed suit in this Court to confirm the Award, and Respondent cross-moved to vacate the Award.

Conex moves to vacate the Award primarily on the ground that there is no basis in the

record to support the Arbitrator's determination that Respondent was bound by the 2007 collective bargaining agreement ("2007 CBA"). Conex contends that it is not bound by the 2007 CBA, arguing: "[I]f the Petitioner did not outline the changes set forth in the 2007 CBA to the Respondent at the time that Respondent signed the Short Form Agreement, there can be no assent to the new provisions." (Resp.'s Br. 5.) Respondent does not cite to any law to support this argument beyond the vague invocation of "black letter contr5act [sic] law." (Id.)

In short, in his decision of February 4, 2013, the Arbitrator found: "In executing the Short Form Agreement in 2007, the Employer became bound as a signatory to 2007 Agreement with the Union." (Pet. Ex. D at 3.) Conex does not dispute that it executed the Short Form Agreement, nor that the Short Form Agreement incorporated the 2007 CBA. This Court does not perceive a legal basis to find Conex not bound by the 2007 CBA. Conex argues as if the Funds were legally obligated to "outline" changes in the 2007 CGA to Conex, but it not clear what this even means, much less the legal basis for it. Contract law does not generally require one party to a contract to provide any outlines of anything to the other party in order for the contract to be valid and enforceable.

Furthermore, as Petitioner observes, the assertion that the prior CBA did not obligate an employer to make fringe benefit contributions on behalf of nonunion employees performing collective bargaining work cannot be true, as that would violate the National Labor Relations Act. Petitioner aptly points to the Third Circuit's decision in Byrnes v. De Bolt Transfer, Inc., 741 F.2d 620, 623 (3d Cir. 1984):

> The absence of any distinction in the agreements between union an[d] non-union members can be easily explained: the law does not permit such a distinction. Section 8(a)(3) of the National Labor Relations Act, HN1 29 U.S.C. § 158(a)(3),

> provides as follows: It shall be an unfair labor practice for an employer -- by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .
>
> The Supreme Court made clear in *Radio Officers' Union v. NLRB*, 347 U.S. 17, 39-42, 98 L. Ed. 455, 74 S. Ct. 323 (1954), that section 8(a)(3) meant precisely what it said: an employer may not encourage or discourage union membership by means of discrimination. The district court found that DeBolt's practice of making contributions to the Funds on behalf of union members only will encourage union membership. . . . Accordingly, section 8(a)(3) prohibits such a practice.

It is clear that Respondent's argument must fail under Byrnes: the National Labor Relations Act does not allow employers to discriminate by making fund contributions only on behalf of union members. Respondent does not dispute that it was contractually obligated at all relevant times to make contributions to the Fund for members of the bargaining unit. Under the National Labor Relations Act, it therefore had to make Fund contributions for union members and nonmembers alike – it did not have the option to discriminate against nonmembers, regardless of what the contract said.[1]

Respondent has failed to persuade this Court that it was not bound by the 2007 CBA for lack of valid assent to the terms of that agreement.

Respondent next argues, in two sentences, that the arbitrator erred in his calculation of the amount of the Award, but cites no law in support. Respondent has failed to recognize the standard this Court must apply in reviewing a labor arbitrator's decision. In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960), the Supreme Court set

---

[1] Respondent asserts that "the provision allowing the Petitioner to seek benefits contributions for non-union members was not in the 2002 CBA." (Resp.'s Br. 4.) Under Byrnes, even if this assertion is true, it cannot make illegal discrimination legal.

3

forth the fundamental principles for judicial review of the decisions of labor arbitrators, pursuant to 29 U.S.C. § 185 and the Labor Management Relations Act:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.  This is especially true when it comes to formulating remedies.  There the need is for flexibility in meeting a wide variety of situations.  The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.  Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.  When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Judicial review of an arbitrator's decision is limited to the inquiry into whether or not the award draws its essence from the collective bargaining agreement:

> It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispenses his own brand of industrial justice" that his decision may be unenforceable.  When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.

<u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001) (citations omitted).

Third Circuit law provides this additional guidance for the Court's determination of whether the award draws its essence from the collective bargaining agreement:

> It is [] not the role of a court to correct factual or legal errors made by an arbitrator.  A district court may determine only whether or not an arbitrator's award 'draws its essence' from the parties' collective bargaining agreement, and we apply this same standard in reviewing the arbitration award.  Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.
>
> An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in

> light of its language, its context, and any other indicia of the parties' intention. As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.

Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 240-241 (3d Cir. 2005) (citations omitted).

Turning back to Respondent's assertion that the Arbitrator erred in calculating the amount of the Award, under Brentwood, this Court is not authorized to correct factual or legal errors made by an arbitrator.

Respondent next argues that the Arbitrator colluded with counsel and had improper communications with counsel during the arbitration process. Respondent offers no speck of evidence in support. In the absence of evidentiary support, this is mere mudslinging, both unseemly and unpersuasive.

This Court has reviewed the Arbitrator's decision and concludes that it draws its essence from the parties' collective bargaining agreement. The Arbitrator's decision is confirmed. The motion to confirm the Award is granted and the motion to vacate the Award is denied.

                                                                          /s Stanley R. Chesler  
                                                                       STANLEY R. CHESLER  
Dated: April 10, 2013                                       United States District Judge